UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GRACE CALDWELL and<br>LATONYA CALDWELL, | )<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| vs. | )<br>) | |
| CITY OF CHICAGO, Chicago Police<br>Officers Gallegos, Star No. 15130,<br>Marco Bruno Star No. 18850,<br>William Lipke, Star No. 8382.<br>Jimmy Woods, Star No. 8990,<br>Brian Leahy, Star No. 13624, John Lucid,<br>Star No. 2361, David Greenwood,<br>Star No. 15128, Denton, Star No. 19152,<br>Edwards, Star No. 19970, M. Little,<br>Star No. 885, and Lieutenant Nathan<br>Hamilton, Star No. 656, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 08 C 710 |
| Defendants. | )<br>) | |

**MEMORANDUM OPINION**

Charles P. Kocoras, District Judge:

This matter comes before the court on the motion of Defendants the City of Chicago ("the City"), Alejandro Gallegos, Marco Bruno, Jimmy Woods, Brian Leahy, John Lucid, David Greenwood, Nathan Hamilton, and Matthew Little for summary judgment in their favor on Counts I, II, and III of the amended complaint of Plaintiffs Grace and Latonya Caldwell. For the reasons set forth below, the motion is granted in part and denied in part.

# BACKGROUND

Gallegos, Bruno, Woods, Leahy, Lucid, Greenwood, Hamilton, and Little are officers in the Chicago Police Department.[1]   On November 21, 2007, Gallegos communicated with a confidential informant whom he had known for approximately eight months and who had provided information leading to arrests during that time.  The informant told Gallegos that he had been buying heroin from a man named Shiloh Caldwell for the previous six months.  According to the informant, he had been with Shiloh earlier that day at an apartment on the second floor of a building located at 1921 South St. Louis Avenue in Chicago and had observed a large amount of heroin, drug paraphernalia, and $3,500 in cash.  The informant related to Gallegos that Shiloh had stated an intention to sell a large amount of heroin during the upcoming Thanksgiving holiday, even going so far as to state that he would conduct a sort of "two-for-one" sale of smaller units of the drug.  The informant reported seeing about 200 grams of heroin in the apartment at that time.

Gallegos and his partner Bruno drove with the informant to the South St. Louis address to allow him to confirm that the building at that location was the one where he

---

[1]The factual recitation contained herein is derived from documents attached to the undisputed facts set forth in the parties' Local Rule 56.1 statements of material fact and facts that are admitted by operation of Rule 56.1. *See Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004).

had been with Shiloh. Gallegos subsequently searched police records for reports relating to the apartment.  The search revealed several arrest reports for a person named Shiloh Caldwell who reported living at 1921 S. St. Louis.  After viewing a photograph of Shiloh, the informant confirmed that the person in the photo was the same person who had been in the apartment.

Two days later, Gallegos sought and obtained a search warrant for the apartment from a judge in the Circuit Court of Cook County.  The warrant application was supported by a complaint stating the details provided by the informant.  Based upon these representations, the judge concluded that there was probable cause to search the apartment.  The warrant also authorized the seizure of heroin; documents showing residency; any paraphernalia used in weighing, cutting, or mixing of illegal drugs; and money and records detailing illegal drug transactions.

Later that day, the officers went to the apartment to execute the warrant.  At that time, Grace, Latonya, and Latonya's son were residing in the apartment, and all three were at home when the officers arrived.  The parties dispute many of the specifics of what took place during the search, but they agree that the lock on the front door of the apartment building was broken and some paint was missing.  It is also undisputed that the officers took clothes and other items out of the bedrooms and a storage room, scattered them on the living room floor, and stepped on the clothing.  In the course of the

search, dressers, a scanner/fax machine, the kitchen stove, and doors were damaged. The springs in Latonya's bed were broken and a hole was cut in her bedroom wall. A computer, $3,500 in cash, and at least one firearm discovered inside the apartment were seized. No heroin, documents showing residency, drug paraphernalia, or records showing drug transactions were recovered.

Thereafter, Grace and Latonya filed the instant suit against the City and the officers, alleging causes of action under 42 U.S.C. § 1983 for unreasonable search and procurement of the search warrant as well as a state law claim for trespass. After an amendment and a stipulation to dismiss certain officers and one count of the original complaint, three counts remain against the City, Gallegos, Bruno, Woods, Leahy, Lucid, Greenwood, Hamilton, and Little. Defendants now move for summary judgment in their favor on all remaining counts.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law." Fed R. Civ. P. 56(c). A genuine issue of material fact exists when the evidence is such that a reasonable jury could find for the nonmovant. *Buscaglia v. United States*, 25 F.3d 530, 534 (7th Cir. 1994). The movant in a motion for summary judgment bears

the burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record; if the party succeeds in doing so, the burden shifts to the nonmovant to set forth specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).   In considering motions for summary judgment, a court construes all facts and draws all inferences from the record in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

With these principles in mind, we turn to the instant motion.

## DISCUSSION

## I.  Claims Brought Under 42 U.S.C. § 1983

Counts I and II of the complaint allege violations of 42 U.S.C. § 1983.  To recover under § 1983, a plaintiff must show a deprivation of a right guaranteed by the laws or Constitution of the United States by a person or persons acting under color of state law. *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007).  Count I asserts that the officers deprived Grace and Latonya of the protections of the Fourth Amendment against unreasonable search and seizure in the way that the warrant was executed.  In Count II, the Caldwells contend that Gallegos violated their Fourth Amendment right against unreasonable search and seizure by obtaining a search warrant that was not supported by probable cause.  With respect to both of these claims, there is no dispute that the

officers were persons acting under color of state law, so the discussion that follows examines only whether Defendants have demonstrated as a matter of law that the Caldwells' Fourth Amendment rights were not violated.

*A.  Reasonableness of the Search*

Defendants contend that they are entitled to summary judgment that the search of the apartment and seizures of property were reasonable.  The reasonableness of a particular action challenged under the Fourth Amendment is measured by looking at the totality of circumstances involved.  *See, e.g., Narducci v. Moore*, 572 F.3d 313, 319 (7th Cir. 2009).  The parties' 56.1 statements set out several genuine issues of material fact exist with regard to the manner in which the search was conducted.  These issues include whether the officers entered the apartment without knocking and announcing their office, the length of the search, and whether the warrant authorized the seizure of particular items removed from the Caldwell residence.  Another material issue concerns whether the officers excessively or unnecessarily damaged the Caldwells' property.  Both sides have adduced evidence upon which a finder of fact could rely to reach opposite legal conclusions as to the reasonableness of the officers' conduct in executing the warrant. Consequently, this court is not able to assess the totality of the circumstances involved, precluding a conclusion as to the reasonableness of the officers' actions as a matter of law at this stage of the proceedings.

In addition, the lack of agreement on the essential facts stymies an assessment of the Defendants' invocation of the defense of qualified immunity, which shields government officers from liability "unless their actions violate clearly established statutory or constitutional rights of which a reasonable officer would have known." *Hinnen v. Kelly*, 992 F.2d 140, 142 (7th Cir. 1993).  In the absence of an undisputed account of the actions the officers took, it is not possible to determine whether a reasonable officer would have known that the actions would have violated clearly established legal rights.  Accordingly, summary judgment is not appropriate for the § 1983 claim set out in Count I.

*B.  Validity of the Search Warrant*

Count II of the complaint contends that Gallegos is liable under 42 U.S.C. § 1983 for his conduct in obtaining the search warrant.  Gallegos contends that he is entitled to summary judgment on this count because of the existence of the warrant authorizing the search.  A search of a private location conducted pursuant to a valid search warrant does not violate the Fourth Amendment.  *See Justice v. Town of Cicero*, 577 F.3d 768, 772 (7th Cir. 2009).  The validity of an issued search warrant can be effectively challenged by a showing in one of three areas: a failure of the judge issuing the warrant to maintain a neutral and impartial role; dishonesty or reckless disregard for the truth by a police officer in preparing an affidavit supporting a request for a warrant; or a warrant so

devoid of probable cause that a reasonable officer could not believe that probable cause

for search existed. *United States v. Garcia*, 528 F.3d 481, 487 (7th Cir. 2008). The

Caldwells contend that the second exception is present in this case; they argue that the

confidential informant did not actually exist and that all statements Gallegos attributed

to the informant in the affidavit presented to the state court judge were lies he concocted

to obtain the warrant. A sworn statement supporting a search warrant carries with it a

presumption of validity. *Franks v. Delaware*, 438 U.S. 154, 165, 171 (1978); *Suarez v.

Town of Ogden Dunes*, 581 F.3d 591, 596 (7th Cir. 2009). The presumption can be

overcome by evidence that the assertions within the statement were false. *Suarez*, 581

F.3d at 596. However, the contents of the statement must be more than merely incorrect;

rather, it must be shown that the complaining officer knew they were false or made them

with a reckless disregard for their truth or falsity. *See Franks*, 438 U.S. at 165.

The Caldwells rely on three items in the record that they contend permit an

inference that the informant is a figment of Gallegos's imagination. The first is the

assertion that unidentified officers stated during the search that they had received an

"anonymous tip" that drugs were going to be delivered to the back porch of the

apartment. According to the Caldwells, this comment represents the true basis for the

search, rather than the information Gallegos laid out in his request for the search warrant.

They also rely heavily on the characterization of the source of this information as an

"anonymous tip"; the implicit argument is that the officers would not refer to a known confidential informant as an "anonymous tip."

This argument fails for two separate reasons. First, any evidence offered to defeat summary judgment must first meet the threshold consideration of admissibility. *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). Because the Caldwells are offering the unidentified officers' words for their truth, the statements would constitute hearsay and therefore inadmissible at trial. There is no indication that Gallegos was the speaker such that the statement might qualify as an admission by a party opponent. Inadmissible evidence cannot create an issue of fact sufficient to defeat a motion for summary judgment. *See id.*

Second, and more importantly, the statement upon which the Caldwells rely does not contradict Gallegos's representations in the affidavit. The request for the search warrant stated that the informant had relayed information regarding Shiloh's expressed intent to sell a large amount of heroin during the holiday weekend; a comment regarding delivery of additional drugs to the apartment is not inconsistent with the information provided in the complaint for search warrant. Furthermore, the characterization of the source of the information as an "anonymous tip" is a label attached by the Caldwells in their briefing; nowhere in the deposition testimony they cite do they state that the officers used that terminology. Rather, Latonya stated that the officer said there was

supposed to be a large drug delivery to the back porch of the apartment and Grace reported only that an officer had stated that "somebody told them" additional drugs would be delivered to the porch.    Nothing about these statements equates to a contradiction of the informant's words such that it would raise suspicion that Gallegos had fabricated the informant.   Accordingly, even if the statements were admissible, they do not supply a basis for a trier of fact to doubt that the informant existed.

The second challenge the Caldwells advance is a claim that the informant does not exist because Bruno, Gallegos's partner, stated that he had not met the informant before November 21.  Here, their position boils down to an assertion that, as Gallegos's partner, Bruno would necessarily have known the confidential informant for the same length of time as Gallegos.   However, the undisputed evidence is that both Bruno and Gallegos met with the informant in person.   The Caldwells' insistence that the differing amounts of time that the officers had personal contact with the informant equate to an indication that both are lying about the informant's existence is conjecture at best.   This type of argument is insufficient to provide a meaningful foil to the evidence provided by the officers such that a finder of fact could reasonably agree with the Caldwells' assertions. *See United States v. McDonald*, 723 F.2d 1288, 1294 (7th Cir. 1983).

Finally, the Caldwells point to the inclusion of an incorrect street name at one of the eight times that the address of the apartment is given in the affidavit.   This single

discrepancy is not sufficient to cast the veracity of the entire affidavit in doubt. *See United States v. Souffront*, 338 F.3d 809, 822 (7th Cir. 2003) (concluding that a "technical contradiction does not reveal a disregard of the truth").

None of the Caldwells' assertions establishes that the confidential informant was fictional or undermines the validity of the affidavit provided in support of the search warrant. The presumption of validity of the affidavit provided to the judicial officer remains intact, as does the conclusion of the state court judge that the statements within it constituted probable cause for search. Consequently, the search warrant that issued did not represent a deprivation of the Caldwells' Fourth Amendment protections against unreasonable search, and summary judgment is appropriate on the § 1983 claim set out in Count II of the complaint.

The validity of the search warrant is also central to the viability of the state law claim for trespass set out in Count III. To constitute a cognizable trespass, an entry onto the land of another must be unauthorized. *People v. Goduto*, 174 N.E.2d 385, 387 (Ill. 1961). Given the validity of the search warrant, the officers' entry was authorized by law, negating a cause of action for trespass. As a result, Defendants are entitled to judgment as a matter of law in their favor on Count III. Since Count III is the sole count asserted against the City, it is dismissed as a defendant.

- 11 -

## CONCLUSION

Based on the foregoing analysis, Defendants' motion for summary judgment [71] is denied with respect to Count I and granted with respect to Counts II and III of the amended complaint.  The City is dismissed as a defendant.

Charles P. Kocoras
United States District Judge

Dated:      July 8, 2010